BROWN v. OZARK BLACK MARBLE COMPANY, *et al.*
OZARK BLACK MARBLE Co. v. STEPHENSON, *et ux.*

5-121                                      258 S. W. 2d 882

Opinion delivered June 8, 1953.

*Barber, Henry & Thurman* and *Opie Rogers,* for appellant.

*W. F. Reeves* and *N. J. Henley,* for appellee.

J. SEABORN HOLT, J. Two cases have been consolidated on this appeal, *R. R. Brown* v. *Ozark Black Marble Co.* and *William Stephenson, et ux.,* interveners, in which a mortgage foreclosure is involved, and the case of *Ozark Black Marble Company* v. *William Stephenson, et ux.,* a suit for damages and injunctive relief against the Stephensons.

Both cases are an aftermath of *Ozark Black Marble Co.* v. *Stephenson,* 208 Ark. 338, 186 S. W. 2d 145, opinion March 19, 1945, in which the same two tracts of land and deeds were involved as here. In that case, the facts disclose that on January 30, 1939, the Stephensons executed to J. G. Cazort and H. B. Skinner a "Stone Deed" to all the stone on Stephenson's home place of 128 acres, in consideration of the sum of $100 "and other valuable considerations . . . It is understood that J. G. Cazort and H. B. Skinner are to form a corporation by the name of Ozark Black Marble Co., and are to give W. M. Stephenson and wife 150 shares of no par value, common stock, also $100 per acre for land that is used in any way

or that is damaged, as used or damaged or any fraction thereof; and Grantees to leave any buildings constructed on said lands if and when operations on above land are abandoned."

The land was described as situated "in Searcy County, State of Arkansas, to-wit: That part of the N ½ NE ¼ Section 11, and of the S ½ SE ¼ Section 2 and of the SW ¼ SW ¼ Section 1 Twp. 14 N, R 15 W, described as follows: (a metes and bounds description) containing in all 128 acres more or less."

This deed was recorded February 4, 1939.

On August 31, 1939, Stephenson executed another deed conveying all of the stone (Stone Deed) to Ozark Black Marble Co. on a 132 acre tract (adjoining the 128 acre tract) for a consideration of $1.00 "and other good and valuable considerations. . . . It is agreed and understood that the Ozark Black Marble Company is to pay W. M. Stephenson and wife $100 per acre for land that is used, or damaged in any way, or any fraction thereof, and Grantees to leave any buildings constructed on said lands if and when operations on above land are abandoned." This 132 acre tract (known as the Mabrey tract) is described as "land situated in Searcy County, State of Arkansas, to-wit: 68 acres of undivided half of W ½ SW ¼ Sec. 1 and NE ¼ SE ¼ Sec. 2, 108 acres; Pt. SW ¼ NW ¼ Sec. 1 described as follows: Commencing at the SW Cor. of said Sec.; running E. 7 rods for place of beginning; thence N. 11 rods; thence E. 21 rods; thence S. 11 rods; thence W. 21 rods to place of beginning, being 1 acre more or less. Pt. SE ¼ NE ¼ Sec. 2, Tp. 14, N. R. 15 W, described as follows: Commencing at SE Cor. of SE ¼ NE ¼ Sec. 2 and running N. 35 rods; thence W. across big hollow and up to the main bluff on W. side of said big hollow; thence run in SW direction around with main bluff to W. boundary line of SE ¼ SE ¼ Sec. 2, Tp. 14 N, R 15 W; thence S. to corner of said forty; thence E ¼ mile to place of beginning, containing 17 acres, more or less. Also 4 acres out of SE Cor. of SE ¼ SE ¼ Sec. 2 and 1 acre out of SE Cor. of NE ¼ SW ¼ Sec. 2, all in Tp. 14 N,

R 15 W, containing in the aggregate 132 acres, more or less." This deed was recorded on August 31, 1939.

On February 21, 1939, Cazort and Skinner executed a "Stone Deed," conveying all "stone in and under that may be produced from" the 128 acre tract, to Ozark Black Marble Co. This deed was recorded February 23, 1939.

On February 29, 1944, Stephenson brought a suit against Ozark Black Marble Co. in the Searcy Chancery Court to cancel the two Stone Deeds on the two tracts of land above on the ground that Cazort and Skinner had misrepresented their financial ability. The trial court entered a decree cancelling the two Stone Deeds as prayed, but on appeal here March 19, 1945, we reversed, and there said: "On the direct appeal the decree is reversed and the cause remanded with directions to dismiss the complaint for cancellation as being without equity, subject to the right of appellees to bring another action to cancel for failure of appellants to use due diligence to further develop and market said black marble in changed economic circumstances."

On January 1, 1944, R. R. Brown, appellant, loaned Ozark Black Marble Co. $1,580.97, taking its note therefor payable five years after date. As security for payment, Ozark executed a mortgage to Brown on the "stone in and under" the 128 acre and the 132 acre tracts, title to which was in Ozark Black Marble Co. The mortgage was recorded January 4, 1944.

It thus appears that this mortgage was executed and recorded almost two months before the Stephensons sued in February 29, 1944, to cancel the Stone Deeds, which action, as indicated, on appeal here, resulted in our dismissing his complaint and holding that the two Stone Deeds were "outright conveyances of all stone under the respective tracts of land."

The present suit by Brown against Ozark Black Marble Co. was brought in April, 1949, to recover the amount due on the note, with prayer for foreclosure of the mortgage lien on the two tracts in question. Stephen-

son intervened in this suit and alleged, in effect, that Ozark had no right, claim or title to the lands mortgaged to Brown, that the Stone Deeds were leases and void because Ozark had not operated the marble quarry and had failed to perform certain agreements with Stephenson.

Trial on September 10, 1952, resulted in a dismissal of Brown's complaint "insofar as it seeks a lien upon the lands here involved . . . for want of equity" and directed cancellation of the mortgage in question.

In this Brown case, it appears undisputed that Ozark executed its note to Brown for $1,580.97 January 1, 1944, due five years thereafter, and as security, also executed a mortgage on the two tracts of land covered by the two Stephenson deeds to Ozark (the 128 acre tract and the 132 acre tract, that this mortgage was duly recorded in Searcy County on January 4, 1944, that the debt was not paid at maturity, that the deeds held by Ozark were both recorded prior to January 4, 1944, and constituted the record of title in Ozark. We find no evidence of any fraud on the part of Ozark Black Marble Company in procuring the loan from Brown and executing the mortgage as security. The burden was on appellees to establish fraud. *Gregory* v. *Consolidated Utilities, Inc.*, 186 Ark. 406, 53 S. W. 2d 554.

Brown was not concerned about any alleged agreements or differences arising between Ozark Black Marble Co. and Stephenson relating to diligence exercised by Ozark in developing the two pieces of property. He had a perfect right to rely on the record of the recorded deeds which showed that the unconditional title to the stone on and under the two tracts in question was in Ozark Black Marble Co. He was in the position of an innocent holder and entitled to a foreclosure of his security for the full amount due on the note against appellees. We therefore reverse the decree in the Brown case and remand, with directions for further proceedings consistent with this opinion.

In the case of *Ozark Black Marble Co.* v. *Stephenson, et ux.*, the parties agree that the primary and decisive

question presented is, as stated by the Chancellor "whether or not the plaintiff company (Ozark) exercised reasonable diligence in the development of the properties covered by the stone deeds. In the opinion of the court this primary question rests entirely upon the issue of whether or not plaintiff was prevented from developing this property by the wrongful conduct of the defendant, Stephenson."

The court found the issues in this case in favor of appellees and directed the cancellation of the two Stone Deeds in question.

After a review of all the testimony, much of which appears to be in irreconcilable conflict, we are unable to say that the Chancellor's findings that Ozark failed to exercise due diligence in developing the property involved were contrary to the preponderance of the evidence.

While on trial de novo here, we are not bound by the findings and conclusion of the Chancellor, we do give due deference to such findings as to the preponderance of the evidence where the evidence, as here, is conflicting and evenly balanced. Our rule is "that the judgment of the chancellor on the question of the preponderance of the evidence will be considered as persuasive when the evidence is conflicting and evenly poised, or nearly so." *City of Little Rock* v. *Newcomb,* 219 Ark. 74, 239 S. W. 2d 750.

The court's findings contain these recitals: "It appears that more than four years had elapsed since the opinion of the Supreme Court before suit was filed and more than seven years had elapsed since the opinion of the Supreme Court when the cause was finally submitted. During all this time the only effort the plaintiff made for the development of the property was for approximately one week in July, 1946. Aside from that one week's work, nothing has been done. Therefore, the court must conclude that the plaintiff was not diligent in the development of the property and the marketing of the products. Mr. Cazort seeks to excuse this lack of diligence by asserting that the defendant, Stephenson,

by threats of physical violence prevented the plaintiff from pursuing operations." Testimony as to threats of physical violence was conflicting.

"Moreover, it is not claimed by Mr. Cazort or any of his witnesses that Stephenson in any manner forbade or hindered operations on the Stephenson lands. It was only entry upon the Mabrey lands (the 132 acre tract) to which Stephenson objected. All agree to this fact. . . . The testimony shows that the plaintiff was not to enter upon the Mabrey lands until they were paid for; that plaintiff first procured Stephenson to buy these lands from Mabrey with the assurance that the plaintiff would soon raise the money and pay for them; that plaintiff was not to enter upon them until they were paid for; that Stephenson later sold his cattle and paid Mabrey the purchase price, either $2,000 or $2,100; that the plaintiff never paid Stephenson anything for them and never acquired any rights in them and didn't even claim such rights during the original suit. During the operation of the mine, Cazort stated to his superintendent, Derickson, that he had no right to enter upon the Mabrey lands on several occasions."

In our former decision, above, as has been indicated, while we reversed and declared the two deeds there (which are the same deeds in question here) to be Stone Deeds, in that case there was no allegation that Ozark Black Marble Co., appellant here, had breached "an implied warranty to develop" and that question was not determined. We did, however, specifically reserve to appellees (Stephensons) "the right . . . to bring another action to cancel for failure of appellants (Ozark Black Marble Co.) to further develop and market said black marble in changed economic circumstances."

Accordingly, the decree in this case of *Ozark Black Marble Co.* v. *Stephenson, et ux.,* is affirmed.

*McFaddin, J.,* not participating.