Danny Carl STOBAUGH, et al. *v.* TWIN CITY BANK

88-166 771 S.W.2d 282

Supreme Court of Arkansas
Opinion delivered June 5, 1989

*Yancey & Nichols, P.A.*, by: *Mark W. Nichols*, for appellant Danny Carl Stobaugh.

*Ralph M. Cloar, Jr.*, for appellants Hunter Gammill, et al.

*Robert L. Brown, P.A.* and *Arnold, Grobmeyer & Haley*, by: *Robert R. Ross*, for appellants W. Bigelow Robinson III, et al.

*Gill Law Firm*, for appellants E. Stewart Allen, Claude B. Carpenter and Barbara Carpenter, James D. Gattis and Janet G. Gattis, Floyd R. McCann, and Sherman R. Moore.

RONALD E. BUMPASS, Special Chief Justice. This is an appeal of a decision granting appellee's Motion for Summary Judgment. The case was brought by a creditor of the limited partnerships to enforce individual capital contribution promissory notes subsequent to default by each of the limited partners. While separate actions were brought against limited partnership, the action was consolidated by the chancellor, argued, and decided on common facts.

Memphis Advisory Group, Inc. ("MAG"), a Tennessee

corporation, served as the sole general partner to four limited partnerships formed in Arkansas. The Certificate and Agreement of Limited Partnership was filed with the Secretary of the State of Arkansas on February 18, 1983. On September 10, 1984, Community Bank of Germantown, Tennessee ("CBG") loaned MAG approximately $2,000,000.00 for working capital for the four partnerships: Lagniappe Lafayette Limited Partnership, Lagniappe Columbus Limited Partnership, Lagniappe Wichita Limited Partnership, and Lagniappe Newport News Limited Partnership. Each of the limited partnerships held individual promissory notes for capital contribution from the limited partners. The amount of each limited partner's capital contribution promised to be paid to the partnership was contained in the Certificate publicly filed with the Secretary of State. MAG assigned the capital contribution notes to CBG as collateral for the guaranty to repay the loan.

On September 11, 1984, CBG sold the four loans made to the partnerships to Twin City Bank of North Little Rock ("TCB"). The four MAG notes and the guaranty by the limited partnerships, with the attendant capital contribution notes executed by the limited partners, were included as collateral and all assigned to TCB in the loan package.

In November of 1984, the Lagniappe hotel chain collapsed due to the theft of funds by principals in MAG, probable mismanagement of funds, and dishonest dealings with these and other limited partnerships.

The capital contribution notes executed by the limited partners became delinquent. Therefore, CBG, acting in its capacity as escrow and collection agent for TCB, contacted the appellants and requested payment. The limited partners responded by purporting to rescind their agreement to pay their notes on the ground that they had been defrauded by MAG. Later in the year, a settlement was reached which included an agreement by a surety, Mutual Fire and Inland Insurance Company of Pennsylvania, to indemnify the limited partners on their note payments to TCB. However, Mutual Fire went into receivership in 1986, after making substantial payments toward the limited partners' capital contribution notes.

After obtaining a judgment against Mutual Fire, TCB filed

suit against the limited partners, the limited partnerships, and MAG. These suits were consolidated in one chancery division. In October of 1987, TCB moved for summary judgment against the limited partners to enforce the remaining and unpaid capital contribution notes. For purposes of that motion only, TCB conceded that the defendant limited partners were defrauded by MAG, and that misrepresentations were made in the limited partnership private placement memorandum, although TCB did not concede that the misrepresentations were material. As to the capital contribution notes, TCB further admitted that it was not a "holder in due course" as defined in the Uniform Commercial Code.

In addition to the stipulation between the parties that TCB was not a holder in due course and that the general partner was guilty of fraud and misrepresentation, the limited partners allege that the transaction between TCB and the Tennessee bank was a subterfuge to avoid the Arkansas usury laws. The appellee insists that it made a loan directly to the general partnership, but the appellants argue that the appellee is not a creditor of the partnership because it did not extend credit directly or indirectly to the partnership.

The Chancellor granted TCB's Motion for Summary Judgment, thereby enforcing the limited partners' obligation to make payment on the capital contribution notes, after taking into consideration all credits, including payments by the surety, to which each limited partner was entitled to respectively. From that decision, these appeals arise.

Appellants contend that the trial court erred in exercising subject matter jurisdiction. By virtue of the nature of the action, alleged to be a suit on promissory notes, appellants allege that the trial court, a court in equity, lacked jurisdiction to decide a collection case, which is an action at law. Under TCB's theory of the case, which the Chancellor obviously adopted, these promissory notes were the limited partners' capital contributions to be paid over a period of time without interest, but which would be paid under certain conditions contained in the Certificate of Limited Partnership. Appellants insist that an action to collect upon a promissory note is an action cognizable only at law. However, as appellee notes, TCB's complaint alleged a number of

equitable causes of action, such as equitable estoppel, detrimental reliance, and reformation of the promissory notes.

 When the joint stipulation, which states that the appellants were defrauded, the notes were not negotiable, and appellee was not a holder in due course, is read with the allegations of the appellee and the appellants, it becomes clear that there were matters cognizable in equity pending before the chancellor. The chancellor, having the right to retain jurisdiction for one purpose, had the right to retain jurisdiction for all purposes. *See Scroggins v. Bowen*, 249 Ark. 1155, 464 S.W.2d 79 (1971). A complaint alleging more than one theory of recovery is actionable in the court where it was filed if at least one of the theories stated is a proper cause in that court. A complaint is not subject to dismissal for failure to state facts upon which relief could be granted if any one of the allegations would support a theory in the court where the action was commenced. *Williams v. J.W. Black Lumber Co.*, 275 Ark. 144, 628 S.W.2d 13 (1982).

A case very close on point is *Chelsea Nat'l Bank v. Lincoln Plaza Towers Assocs.*, 61 N.Y.2d 817, 462 N.E.2d 130, 473 N.Y.S.2d 953 (1984), wherein a bank brought an action to recover on defaulted notes of the limited partners. The bank brought the suit against the limited partnership on its guaranty of the general partner's debt. The Court of Appeals of New York held that the limited partners were not liable to the bank for the general partner's default on a loan. The opinion was based on the limited partnership's agreement which did not give the general partner authority to obligate the limited partnership by liability on the limited partners. The *Chelsea National Bank* case does not stand for the proposition that the creditor of a general partner can never proceed against the limited partners for collection of a partnership debt. However, it does establish that a factual determination is necessary before a decision is reached in such cases.

In granting the motion for summary judgment, the chancellor relied upon Ark. Code Ann. Section 4-43-502(b) (1987), which reads in pertinent part:

> [A] creditor of a limited partnership who extends credit, or whose claim arises after the filing of a certificate of limited partnership or an amendment thereto which . . . reflects

the obligation . . . may enforce the original obligation.

The appellants argue that this statute is inapplicable to appellee because the appellee was a creditor of MAG and not the limited partnership.

■ Fraud may be a defense against a creditor's claim against a limited partner for contribution. This topic was discussed in 59A Am.Jur.2d, *Partnership,* Section 1358, p. 923 (1987):

> Repudiation or fraud would relieve the limited partner of his obligation, but the mismanagement, negligence, diversion of some assets, action beyond authority, or failure to perform certain elements of the agreement will not.

The article in American Jurisprudence cited the case of *Partnership Equities, Inc.* v. *Marten,* 15 Mass. App. 42, 443 N.E.2d 134 (1982). The *Marten* case involved a suit by the partnership against its limited partners and was decided in favor of the general partner. Nevertheless, the Massachusetts court stated:

> Payment may be excused where there has occurred a failure to meet a condition expressed in the certificate of limited partnership or where there has been a profound failure of consideration such as a repudiation of, or fraud incident to, the essentials of the venture to which subscription was made.

Due to the broad scope of TCB's stipulation to the general partner's fraud and misrepresentation, which fails to address or exclude the actual knowledge of bank officials as to any dishonest dealings, an issue of actual knowledge of bank officials regarding unlawful activities must be more fully developed, through testimony, in the lower court.

■ We cannot accept the argument of TCB that the governing limited and general partnership law precludes the application of the Uniform Commercial Code to this transaction. *See* "Financing Limited Partnerships and Their Partners: Caveat Creditor," 37 *Bus. Law.* The applicability of the Uniform Commercial Code to the transaction at issue was not adequately developed in the trial court; therefore, it needs to be addressed upon remand. Furthermore, there is insufficient proof to rule the

allegation that TCB was using the Tennessee bank as a subterfuge to make a loan at a rate of interest higher than allowed in Arkansas.

In remanding the case, the general partner's mismanagement, negligence, diversion of assets, action beyond the authority of the general partner, or failure to perform certain conditions of an agreement by the general partner is not within the category of fraud which will relieve limited partners from payment of their capital contribution obligation or bar a creditor of the partnership from enforcing the obligation.

The case is reversed and remanded.

HOLT, C.J., DUDLEY, and HAYS, JJ., not participating.

Special Justices DONIS HAMILTON and GARY NUTTER join.